UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: 15-CR-095 (KBJ) |
| | : | |
| v. | : | |
| | : | |
| DANIEL SAVAGE | : | SENTENCING: November 16, 2015 |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in determining an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration at the bottom third of the guidelines (49 months), to be followed by 120 months of supervised release, with the conditions recommended by the United States Office of Probation, including sex offender assessment and treatment, a no unsupervised contact with minors provision, and a computer monitoring/search requirement. Additionally, the defendant is required by statute to register as a sex offender for a minimum period of 15 years. In support this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

I.  **BACKGROUND**

   A.  **Procedural Posture**

The defendant was arrested on April 18, 2015 in the District of Columbia, and made his initial appearance before United States Magistrate Judge Robinson two days later. The defendant was ordered held without bond, which his status remains. On July 30, 2015, the United States Attorney for the District of Columbia filed a one-count Information charging the defendant with

1

Travel with Intent to Engage in Illicit Sexual Conduct. On September 3, 2015, the defendant entered a guilty plea to one count of Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b), pursuant to a written plea agreement before this Court. The court set a sentencing date of November 16, 2015.

### B.    Statement of Offense

Between on or about April 14, 2015, and April 18, 2015, Metropolitan Police Detective Timothy Palchak had been acting in an undercover capacity ("UC") as part of an FBI/MPD multi-jurisdictional Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In this capacity, Detective Palchak posted an online advertisement on a website with classified advertisements which is known for meeting individuals who have a sexual interest in children and incest. The advertisement used key words including "taboo" and "perv" to attract persons with a sexual interest in children.

On or about April 14, 2015, the UC began communicating with an individual later identified as Daniel Savage ("defendant"). The defendant contacted the UC via email in response to an online advertisement the UC had posted. The defendant asked the UC what he was into at which point the UC replied "taboo, incest, etc." The defendant responded "Same! We should talk" then asked the UC if he was a dad with access to a child. The defendant told the UC that he was not into "G" but into "B." The UC understood this to mean that the defendant was not interested in girls but boys instead. The defendant then asked the UC if he knew any available boys. The UC replied that he had access to a 12-year-old boy who was a son of a friend. The UC specifically stated that his friend allowed his 12-year-old son to visit with the UC at the UC's apartment for the purpose of engaging in sexual acts.

The UC continued conversing with the defendant through email and text messages from April 14, 2015 to April 18, 2015. During their ongoing conversations, the defendant expressed interest in engaging in oral and anal sex with the purported 12 year-old boy. The defendant pressed the UC about "set[ting] this up for some time soon" so that he can "meet the boy." He peppered the UC with questions about the purported 12 year-old boy including "does he fuck," "how deep he can suck," "does he have pubes" "[h]ow big is his cock," "does he like to bottom," and "is he open to playing or forced?" The UC then asked the defendant what he wanted to do with the purported 12 year-old-boy, at which time the defendant replied that he wanted to do "oral," "rimming," and "fucking." The UC understood this to mean that the defendant wanted to engage in both oral and anal sex with the child. The defendant also stated that he likes "8 to 13" which the UC interpreted as meaning that the defendant was interested in children between the ages of 8 and 13 years old. The defendant then requested a photograph of the purported 12-year-old boy so that he could see what the child looked like.

The defendant made arrangements to travel from his home in Pennsylvania to the District of Columbia for purposes of engaging in anal and oral sex with the purported 12-year-old boy. The defendant and the UC created a plan where they agreed to meet at a pre-arranged location, specifically a bar in the District of Columbia. Thereafter, they planned to leave the bar together and meet the purported 12-year-old boy in front of the UC's apartment complex before proceeding inside to engage in sexual activities. The defendant further explained to the UC that he planned to watch child pornography with the purported 12 year-old boy. The defendant told the UC that he would obtain child pornography videos from a friend on thumb drives and bring them to the pre-arranged location.

On April 18, 2015, the defendant contacted the UC again in an attempt to confirm their plans and that the "kid was into it." The defendant also wanted to confirm that the UC was not law enforcement. The UC reassured the defendant that nobody was getting cold feet and that the 12-year-old boy was "into" the encounter. The defendant asked the UC about the plan for the day and asked the UC about the size of the 12 year-old boy's penis and "balls." The defendant continued to express his excitement about the meeting.

On April 18, 2015, the defendant arrived at the prearranged location at 9:45 a.m. in the District of Columbia. The UC identified the defendant from a photograph he had sent to the UC during their email and text exchange. The UC also recognized the defendant's voice from a phone call they had earlier that morning. The defendant told the UC that he had parked at a meter and only had 37 minutes left on the meter so he would need to find another place to park. The UC told the defendant that the defendant could use his parking pass to park in his spot for the remainder of the day. The defendant was subsequently arrested by Members of the Child Exploitation Task Force.

After his arrest, the defendant waived his *Miranda* rights and was interviewed by agents of the FBI. The defendant admitted to traveling from Pennsylvania to the District of Columbia for the purpose of engaging in sexual activity with a 12-year-old boy. The defendant further admitted to transporting and possessing child pornography.

On April 18, 2015, law enforcement seized a number of the defendant's belongings. The items included: (1) the vehicle he used to drive from Pennsylvania to the District of Columbia; (2) six USB devices within the vehicle: (a) Exar 64GB thumb drive, (b) HP 4GB thumb drive, (c) Cruzer 8GB thumb drive, (d) (2) Swagelok eDTR drives, (e) Dane-Elec 4GB drive with a serial number 498326; and (3) an Apple iPhone Model #A1533 from the defendant's person that

he used to communicate with the UC. Each of the listed items belonged to and was used by the defendant. Law enforcement conducted a preliminary forensic review of the seized items. The computer forensic examiner identified each of the listed items as containing child pornography or being used in the commission of the described offenses. Several of the images and videos found on the six thumb-drives depicted child pornography and included multiple videos and images of children under the age of 12 years old engaging in sexual acts.

II.     SENTENCING CALCULATION

    A.     Statutory Penalties

The offense of Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b) carries a maximum sentence of 30 years imprisonment, a maximum fine of $250,000, and a term of supervised release not less than five years and up until life pursuant to 18 U.S.C. § 3583(k). Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia. The defendant must also register as a sex offender for a minimum period of 15 years pursuant to 18 U.S.C. § 2250 and 42 U.S.C. §§ 16911(3)(B)(iii) and 16915(a)(2).

    B.     Guidelines Range

The government agrees with the calculation of the defendant's Guidelines sentencing range set forth in the Presentence Investigation Report ("PSR"). See PSR ¶ 6. The base offense level is 24, pursuant to U.S.S.G § 2G1.3. See id. The government agrees with the PSR that the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in prohibited sexual conduct and two (+2) additional points should be applied. See id. There are no additional adjustments that apply and the defendant's adjusted offense level is 26. See id.

The government agrees that the defendant is entitled to a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). See PSR ¶ 6. The government also moves to decrease the defendant's offense level by an additional point pursuant to U.S.S.G. 3E1.1.(b). The defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. The defendant has a total criminal history score of zero and is in the criminal history category of I. See PSR ¶ 7. Thus, the defendant's total offense level if 23. See id. at 6.

With an offense level of 23 and a Criminal History Category of I, the defendant's Guidelines sentencing range is 46 to 57 months imprisonment with a fine range of $10,000 to $100,000. See PSR ¶ 8.

### III.   GOVERNMENT'S RECOMMENDATION

#### A.   Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant"

(18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

### B.      Basis for the Government's Recommendation

Given the particular circumstances of this case and the defendant's significant cooperation, the government submits that a sentence of 49 months, with 120 months (10 years) of supervised release, and the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted in this case based on the factors in 18 U.S.C. § 3553(a). The recommended sentence is sufficient, but not greater than necessary, to accomplish the purpose of sentencing.

#### 1.      The Nature and Circumstances of the Offense

The defendant's actions in this case are egregious. The defendant traveled from Pennsylvania to the District of Columbia for the purpose of engaging in sexual acts with a 12-year-old boy. After initiating a conversation with an undercover officer, the defendant engaged in lengthy and graphic conversations relating to his sexual interest in boys, specifically the boy to whom the UC claimed to have access.  The defendant spent four days chatting with the UC, describing in detail the sex acts he wanted to engage in with the 12-year-old boy.  He then traveled to actually meet the boy with the belief that the purported 12-year-old child was a real child that he would sexually abuse. The defendant's knowing and intentional actions – his travel

7

from Pennsylvania to Washington, D.C., for the purpose of sexually abusing a young child – demonstrate the danger he poses to the community

Additionally, the defendant possessed and transported a significant amount of child pornography, which itself is inexcusable and wrong. The defendant brought the six thumb drives filled with child pornography to show the 12-year-old boy during what defendant hoped would be their sexual encounter. The thumb drives contained several images and videos, many of which involved children under the age of 12, engaged in sexual acts. In addition to possessing these images, the defendant brought them with him from Pennsylvania to the District of Columbia, thereby evidencing his intentional participation in the market of trafficking child pornography images. The defendant's conduct in this case is severely harmful to society in general and to the child victims of the images possessed, and therefore supports the government's view that the defendant should serve a significant prison sentence.

### 2. The Defendant's History, Characteristics, and Cooperation

To his credit, the defendant has no criminal convictions and his criminal history category score is zero. His employment record has been inconsistent, but at the time of his arrest he was employed part-time at a Wegman's grocery store. Despite the defendant's arrest and guilty plea, his family has been supportive. His parents have traveled weekly from Pennsylvania to visit the defendant at the jail and his mother has indicated a willingness to house the defendant upon his release from custody. Accordingly, it is clear that despite the alleged conduct, the defendant has family support.

Furthermore, the defendant demonstrated early on a willingness to be held accountable for his actions. From the time of the defendant's arrest up until he ultimately plead guilty in this case, the defendant has accepted responsibility for his actions and did not deny accountability for his crimes. He waived his Miranda rights immediately after being arrested and admitted to law

enforcement that he travel with the intentions of engaging in sexual activity with a 12-year-old boy. He also admitted to possessing and transporting thumb drives across state lines that contained child pornography.

Not only did the defendant accept responsibility for his actions but he agreed to cooperate with the government and law enforcement, participating in two debriefs. The defendant was able to provide some assistance to law enforcement by identifying an individual in the Philadelphia area who was involved in child exploitation crimes. The government investigated the information provided by the defendant, obtaining probable cause for an arrest of the targeted individual, who is now deceased.

The government took the defendant's cooperation and information provided by the defendant as well as his acceptance of responsibility into consideration in extending the defendant his plea offer. The defendant was facing potential prosecution for additional crimes, including, among other things, for transporting child pornography in interstate commerce in violation of 18 U.S.C. 2252, which is a crime carrying a mandatory minimum prison term of 5 years. However, as a result of his cooperation, the defendant was offered a plea offer that reduced his sentencing exposure because he was extended the offer to plead guilty only to the instant charge. Because the cooperation is accounted for in the plea terms themselves, the government believes the recommended sentence is fair and just in light of his cooperation.

### 3. Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary in the context of this particular case, to provide just punishment for the defendant's offenses. The defendant's offense for which he entered the plea, as well as the surrounding relevant conduct – possession and transportation of child pornography – are harmful to society in general and warrant a sentence of imprisonment.

The defendant's conversations with the UC and the act of traveling to meet with what the defendant believed to be a 12-year-old boy evidence extremely dangerous conduct. A preliminary forensic review of the thumb drives the defendant possessed at the time of his arrest indicated that there were several images and videos of child pornography, including multiple images and videos of children who appeared to be under the age of 12. The defendant's actions in this regard are egregious and justice requires that they be appropriately punished.

The recommended sentence further accounts for the assistance of the defendant and the defendant's acceptance of responsibility. A sentence below the guidelines would fall short of deterring the defendant from future criminal conduct. Furthermore, a term of 120 months of supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support that he needs so that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration. The defendant is in Zone D of the Guidelines, and thus a probationary sentence would be a departure from the Guidelines. According to the PSR, the defendant does not have the ability to pay a fine in this case. See PSR ¶ 102.

The court should impose a term of supervised release. The government recommends a minimum of 120 months (10 years) of supervised release. A lengthy term of supervised release is appropriate to ensure the defendant's participation in sex offender treatment and most critically to safeguard the community through ongoing monitoring. The government agrees with the PSR that the defendant's conditions of release should include sex offender registration and restrictions on search and internet conditions. The defendant's crimes stem from his online activities, specifically, the defendant's use of known child exploitation websites to maintain contact with others involved in child exploitation crimes. The defendant's use of the Internet and a computer to commit his crimes justifies monitoring his future use of electronic devices.

In addition, the defendant's conduct in this case involved him traveling to engage in sexual conduct with a 12-year-old boy. Accordingly, the Court should preclude the defendant from having unsupervised contact with minors, including family members. The government also requests that the defendant be required to undergo sex offender assessment and treatment, as well as a polygraph examination, to appropriately identify the defendant's needs and risks of reoffending. Given the nature of the defendant's chat communications with the UC and the fact that he met the UC to engage in sexual conduct with a child, it would be prudent for the defendant to undergo a sex offender assessment. Furthermore, the thumb drives that the defendant possessed at the time of his arrest make clear that the defendant has an interest in children, as many of the videos depicted prepubescent children engaging in sexual acts. Although the assessment would deprive the defendant of some liberty, that deprivation is no more than reasonably necessary to achieve the statutory objective of providing treatment.

Moreover, given the defendant's history of mental health issues, specifically ongoing issues with depression, the government requests that the Court order that the defendant undergo

the recommended mental health assessment and any treatment recommended as a result of the assessment.

**5.     Avoiding Unwarranted Sentencing Disparity**

One of the statutory factors to consider at sentencing is the need to avoid unwarranted disparity. Indeed, avoiding such uncertainty and disparity was one of the purposes for the creation of the Sentencing Guidelines.

Recognizing that the facts and circumstances of each case are unique, it is nevertheless instructive to consider the sentences imposed in cases involving comparable charges. This section contains information about recent cases in this District involving the charge of Travel with Intent to Engage in Illicit Sexual Conduct. The government notes that the sentence imposed in each of these cases does not necessarily reflect what the government recommended.

In recent years, there have been two cases in this District involving only the charge of Travel with Intent to Engage in Illicit Sexual Conduct. In <u>United States v. George Kahl</u>, 13-CR-99 (RMC), Kahl traveled to D.C. from another state to sexually abuse a purported 12-year-old girl after communicating online with a UC. Kahl pled guilty to the charge of Travel and was sentenced to 40 months of imprisonment and 10 years of supervised release. In <u>United States v. Scott Swirling</u>, 13-CR-98 (JDB), Swirling traveled to D.C. from another state to sexually abuse a purported 12-year-old year after communicating online with a UC. Swirling pled guilty to the charge of Travel and was sentenced to 42 months of imprisonment and 10 years of supervised release.

Again focusing on recent years, there have been several more cases in this District involving the charge of Travel with Intent to Engage in Illicit Sexual Conduct <u>and</u> the charge of Possession of Child Pornography. All of these cases involved travel for a 12-year-old child and several involved the defendant distributing child pornography to the UC. See <u>United States v.</u>

12

Scanlon, 14-CR-7 (RC) (Scanlon pled guilty to the charges of Travel and Possession of Child Pornography and was sentenced to 51 months of incarceration and 120 months of supervised release); United States v. Cunningham, 13-CR-288 (Howell) (Cunningham pled guilty to the charges of Travel and Possession of Child Pornography and was sentenced to 51 months of incarceration and 120 months of supervised release); United States v. DeGrange, 13-CR-297 (BAH) (DeGrange pled guilty to the charges of Travel and Possession of Child Pornography and was sentenced to 57 months of incarceration and 120 months of supervised release); United States v. Rajashekar, 13-CR-172 (TFH) (Rajashekar was an 18 year old student who, while under state court indictment for possession of child pornography, distributed child pornography to a UC and traveled from Maryland to D.C. to have sex with a 12-year-old child; Rajashekar pled guilty to Travel and Possession of Child Pornography, resolving both the state and federal cases, and was sentenced to 60 months of incarceration and 120 months of supervised release); United States v. VanSant, 13-CR-233 (RJW) (VanSant pled guilty to the charges of Travel and Possession of Child Pornography and was sentenced to 70 months of incarceration and 120 months of supervised release); United States v. George Marion, 13-CR-2 (ESH) (Marion pled guilty the charges of Travel and Possession of Child Pornography and was sentenced to 50 months of incarceration and 120 months of supervised release); United States v. Kaylan Cureton, 12-CR-147 (RJW) (Cureton pled guilty to the charges of Travel and Possession of Child Pornography and was sentenced to 48 months of incarceration and 120 months of supervised release).

In United States v. Rivera, 09-CR-82 (JR), Rivera responded to an online ad posted by a UC. The UC said that he had sexual access to a 7-year-old girl and an 11-year-old girl. Rivera expressed interest only in the 11-year-old girl and then traveled to D.C. to sexually abuse her.

Rivera pled guilty to the charge of Travel and was sentenced to 36 months of incarceration and 120 months of supervised release.

In <u>United States v. Sandoval</u>, 09-CR-83 (RJL), Sandoval responded to an online ad posted by a UC. The UC said that he had sexual access to a 7-year-old girl and an 11-year-old girl. Sandoval expressed interest only in the 11-year-old and then traveled to D.C. to sexually abuse her. Sandoval pled guilty to the charge of Travel and was sentenced to 72 months of incarceration and 120 months of supervised release.

In <u>United States v. Raymond</u>, 09-CR-183, Raymond communicated online with a UC and traveled from Virginia to D.C. to sexually abuse a 4-year-old boy. Raymond specifically expressed an interested in prepubescent boys. After Raymond's arrest, a search was conducted of his residence and child pornography was located on his computer. Raymond pled guilty to Travel and Possession of Child Pornography and was sentenced to 60 months of incarceration and 120 months of supervised release on each count to run concurrent to each other. The sentencing memoranda in the <u>Raymond</u> case are not on the public docket.

In <u>United States v. Laslie</u>, 10-CR-57 (EGS), Laslie communicated online with a UC and traveled from Virginia to D.C. to sexually abuse a purported 11-year-old girl. Laslie specifically expressed sexual interest in children ages 7 to 14 years old. Laslie said that, about ten years before, he had sexually abused a 7-year-old girl. After his arrest, law enforcement investigated Laslie's statements and child sexual abuse charges were filed against Laslie in state court. Laslie pled guilty to Travel and was sentenced to 135 months of incarceration and 120 months of supervised release.

In <u>United States v. Stickney</u>, 09-CR-152 (HHK), Stickney traveled from D.C. to Florida to sexually abuse a 6-year-old child, whom Stickney had previously abused. A search of

Stickney's residence led to the recovery of child pornography depicting Stickney abusing the child. Stickney pled guilty to Travel and Production of Child Pornography and was sentenced to the mandatory minimum sentence of 180 months of incarceration and 600 months of supervised release on each count to run concurrent to each other. The sentencing memoranda in the Stickney case are not on the public docket.

In United States v. Laureys, 09-CR-106 (RCL), Laureys traveled from Maryland to D.C. to sexually abuse a purported 9-year-old child. Laureys specifically expressed interest in children ages 8 to 13. In addition, Laureys had a prior conviction for enticing a minor in violation of the D.C. Code for previously traveling to meet a UC whom Laureys believed was a 12-year-old girl. Laureys was convicted after trial of Attempted Enticement of a Minor, Travel, and Penalties for Registered Sex Offenders, and was sentenced to twenty years of incarceration (two mandatory minimum ten-year terms consecutive to each other) and ten years of supervised release.

In United States v. Lewis, 07-CR-119 (GK), Lewis, a medical doctor, communicated online with a UC and traveled to D.C. to sexually abuse a purported 10-year-old girl. A search of Lewis' residence led to the recovery of child pornography. Lewis was convicted after trial of Attempted Enticement of a Minor and Travel and was sentenced to 151 months of incarceration and 15 years of supervised release.

The instant case involves the charge of Travel for a child aged 12. And while the defendant did not have to plead guilty to either Possession of Child Pornography or Transportation of Child Pornography, he did commit such conduct. Considering all of these facts and circumstances, including the cooperation of the defendant that was accounted for in the defendant's pela offer, the government believes that the sentence of 49 months is appropriate.

## IV. CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 49 months, to be followed by 120 months (10 years) of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for a minimum period of 15 years.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

\_\_\_/s/_____
Andrea Lynn Hertzfeld
Assistant United States Attorney
D.C. Bar 494059
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7808
Andrea.Hertzfeld@usdoj.gov

### Certificate of Service

I hereby certify that I have caused a copy of the foregoing to be sent by email to counsel for the defendant, Dani Jahn, this 5th day of November, 2015.

\_\_\_/s/_____
Andrea Lynn Hertzfeld
Assistant United States Attorney
D.C. Bar 494059
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7808
Andrea.Hertzfeld@usdoj.gov